## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Darin Newson,

                    Plaintiff,          Case No. 5:23-cv-13267

v.                                      Judith E. Levy
                                        United States District Judge
NYX, LLC.,
                                        Mag. Judge Elizabeth A.
                    Defendant.          Stafford

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT [16]

Before the Court is Defendant NYX, LLC.'s ("NYX") motion for summary judgment. (ECF No. 16.) Plaintiff Darin Newson opposes the motion. (ECF No. 20.) For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

### I.    Background

Plaintiff brought this suit against Defendant alleging race discrimination in violation of 42 U.S.C. § 1981 and the Elliot-Larsen Civil Rights Act ("ELCRA"); retaliation in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), and ELCRA; and

violations of the Fair Labor Standards Act ("FLSA"), the Michigan Payment of Wages and Fringe Benefits Act ("PWFBA"),[1] and the Improved Workforce Opportunity Wage Act ("IWOWA"). (ECF No. 1.)

Plaintiff is an African-American man who began working for Defendant as a forklift operator, or "hi-lo driver," in September 2014. (ECF No. 20, PageID.479.) Plaintiff's employment with Defendant ended in January 2016, but he was rehired in January 2019. (*Id.*) In April 2019, Plaintiff complained to Human Resources about a perceived lack of overtime opportunities. (ECF No. 16, PageID.260.)

On June 12, 2019, Plaintiff filed Michigan Department of Civil Rights ("MDCR") Charge #495487, alleging discrimination based on race. (*Id.*) Plaintiff's complaint to MDCR alleged that he was "constantly denied" overtime and believed that "race was a factor." (ECF No. 16-3, PageID.317.) On April 14, 2022, Plaintiff filed MDCR Charge #614851, alleging retaliation. (ECF No. 16, PageID.261.) In this second complaint,

---

[1] Plaintiff's Complaint alleges violations of the "Michigan Wages and Fair Benefits Act." (*See* ECF No. 1, ¶¶ 100–07.) There is no Michigan Wages and Fair Benefits Act. Like Defendant, the Court presumes that Plaintiff intended to allege violations of the PWFBA. (*See* ECF No. 16, PageID.276 (citing Mich. Comp. Laws § 408.481).) In any case, the question is irrelevant because Plaintiff subsequently stipulated to dismissal of this count. (*See* ECF No. 20, PageID.488.)

Plaintiff alleged that Defendant had "continued to deny [him] overtime hours." (ECF No. 16-15, PageID.355.) Plaintiff explained that he believed Defendant had denied him overtime "in retaliation for filing the earlier MDCR race discrimination complaint." (*Id.*)

On December 22, 2023, Plaintiff brought this suit. Plaintiff's Complaint alleges that Defendant "repeatedly and continually denied [him] the ability to earn overtime pay," that "Black employees . . . are routinely denied the ability to earn overtime," and that "other non-Black employees do earn overtime pay." (ECF No. 1, ¶¶ 14–15, 17.) The Complaint also alleges that, after Plaintiff filed a racial discrimination complaint against Defendant, Defendant "began to deny [him] the ability to earn overtime." (*Id.* at ¶¶ 9–10.) Plaintiff asserts eight counts:

- Count I: retaliation under 42 U.S.C. § 1981;

- Count II: retaliation under Title VII;

- Count III: retaliation under ELCRA;

- Count IV: racial discrimination under 42 U.S.C. § 1981;

- Count V: racial discrimination under ELCRA;

- Count VI: violations of FLSA;

- Count VII: violations of PWFBA; and

3

- Count VIII: violations of IWOWA.

(*Id.* at ¶¶ 30–117.)

On April 18, 2025, Defendant filed a motion for summary judgment. (ECF No. 16.) Defendant argues, first, that Plaintiff's Title VII claim should be dismissed for failure to exhaust administrative remedies because, at the time Defendant moved for summary judgment, Plaintiff had not produced a right-to-sue letter from the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* at PageID.265–266.) Defendant argues, second, that Plaintiff cannot establish a *prima facie* case of retaliation because he "cannot establish any adverse employment action, and certainly not one causally connected to protected activity." (*Id.* at PageID.267.) Plaintiff "remains employed by NYX and has worked many hours of overtime." (*Id.* at PageID.271.) Defendant argues, third, that Plaintiff cannot establish a *prima facie* case of discrimination for similar reasons: He can show neither an adverse employment action nor a comparator outside his protected class who was treated more favorably. (*Id.* at PageID.270–271.) Finally, Defendant argues that Plaintiff cannot prove violations of the FLSA, the PWFBA, or the IWOWA. (*Id.* at PageID.273–280.)

4

In his response, Plaintiff stipulates to the dismissal of his FLSA, PWFBA, and IWOWA claims but argues that his discrimination and retaliation claims should survive summary judgment. (ECF No. 20, PageID.485–488.) Plaintiff also introduces a new theory of an adverse employment action, alleging that he was temporarily laid off before other employees with less seniority. (*Id.* at PageID.485, 487.) Plaintiff also produces, apparently for the first time, a right-to-sue letter from the Equal Employment Opportunity Commission. (ECF No. 20-2, PageID.518.) In its reply, Defendant argues that Plaintiff is precluded, at the summary judgment stage, from raising new claims and from introducing evidence not produced during discovery. (ECF No. 21, PageID.534–537.)

## II.   Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "must view all evidence

5

and draw all inferences in the light most favorable to the nonmoving party." *Codrington v. Dolak*, 142 F.4th 884, 890 (6th Cir. 2025) (citing *Anderson*, 477 U.S. at 255).

However, it is "the actual proof," and not "isolated, conclusory allegations," that the Court must view "in the light most favorable to the nonmovant." *Baker v. Blackhawk Mining, LLC*, 141 F.4th 760, 766 (6th Cir. 2025) (citing *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008)). The "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The Court "is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

Perhaps most relevant here, "[t]he non-moving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, "[t]o survive summary judgment, the

6

nonmoving party 'must present significant probative evidence' putting the material facts in doubt." *Walden v. GE Int'l, Inc.*, 119 F.4th 1049, 1057 (6th Cir. 2024) (quoting *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 526 (6th Cir. 2023)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. "The question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 251–52).

## III.   Analysis

### A. Retaliation Claims – Counts I, II, and III

Counts I, II, and III allege retaliation in violation of 42 U.S.C § 1981, Title VII, and ELCRA respectively. Defendant is entitled to summary judgment on all three claims.

#### 1. Count II and Administrative Exhaustion

Under Title VII, administrative "exhaustion 'is a necessary prerequisite to suit.'" *Bangas v. Potter*, 145 Fed. Appx. 139, 142 (6th Cir. 2005) (quoting *Jones v. Truck Drivers Local Union No. 299*, 748 F.2d

1083, 1086 (6th Cir. 1984)). To properly exhaust administrative remedies, a plaintiff must, first, file an administrative charge with the EEOC (or a similar state agency) and, second, receive a "right-to-sue letter" from the EEOC. *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018). Title VII then "requires that a party file a civil action within ninety days of receiving a right-to-sue letter." *Truitt v. County of Wayne*, 148 F.3d 644, 647 (6th Cir. 1998) (citing 42 U.S.C. § 2000e-5(f)(1)).

Plaintiff did not allege in his Complaint that he had exhausted administrative remedies. (ECF No. 16, PageID.265.) Nor did he produce a right-to-sue letter during discovery, despite repeated requests. (ECF No. 21, PageID.536.) In his response to the motion for summary judgment, however, Plaintiff produced a right-to-sue letter, which was issued on September 26, 2023. (*See* ECF No. 20-2, PageID.518.) Because Plaintiff filed his Complaint on December 22, 2023, he has technically complied with the requirement that he file a civil action within ninety days of receiving the right-to-sue letter.

As Defendant points out, however, at the summary judgment stage, Fed. R. Civ. P. 56(c)(1)(A) requires that parties support their factual positions with "materials in the record." Relatedly, Fed. R. Civ. Pro.

37(c)(1) states that when "a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."

Here, Plaintiff appears to have violated Rule 26(a) and (e).[2] As a document Plaintiff would use to support his claim, the right-to-sue letter was subject to 26(a)'s mandatory and automatic disclosure requirements. The letter was also subject to 26(e)'s ongoing disclosure requirements—whenever it was located, it should have been disclosed in a timely manner, particularly given Defendant's interrogatory request that Plaintiff "identify all communications" with the EEOC "regarding any allegations in the Complaint." (*See* ECF No. 21-1, PageID.540.)

---

[2] Fed. R. Civ. P. 26(a) governs required disclosures and states that "a party must . . . provide to the other parties . . . a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims." Fed. R. Civ. P. 26(e) governs ongoing disclosure requirements and states that:

> A party who has made a disclosure under Rule 26(a) —or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

"[E]xclusion of late or undisclosed evidence is the usual remedy for noncompliance." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015). On the other hand, Plaintiff could avoid exclusion by showing that omission of the right-to-sue letter "was either substantially justifiable or harmless." *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003). Plaintiff has, however, "not attempted to make such a showing, or even acknowledged that his untimely production of the right-to-sue letter after the close of discovery might be problematic under the rules governing the discovery process." *Jackson v. AFSCME Michigan Council 25, Loc. 1603*, No. 17-10671, 2019 WL 1399987, at *4 (E.D. Mich. Mar. 28, 2019).

Accordingly, the Court will not consider the right-to-sue letter that Plaintiff produced for the first time in response to Defendant's motion for summary judgment. Plaintiff's Title VII claim is therefore barred for lack of evidence that Plaintiff exhausted his administrative remedies.[3] Even

---

[3] In *Jackson*, 2019 WL 1399987, Judge Battani dismissed Title VII claims on very similar grounds. There, the plaintiff stated that he had received a right-to-sue letter but failed to provide the letter in response to the defendants' discovery requests. *Id.* at *4. The plaintiff at last produced the right-to-sue letter in his response to the defendants' summary judgment motions. *Id.* Judge Battani noted that under Fed. R. Civ. P. 37(c)(1), the plaintiff was not allowed to use the right-to-sue letter in support of his opposition to the defendants' motions for summary judgment, unless his failure to produce the letter was substantially justified or harmless. *Id.* The plaintiff had not made such a showing. *Id.* Accordingly, Judge Battani held that the plaintiff's Title VII claims were barred for lack of evidence that he exhausted his administrative remedies. *Id.*

if the right-to-sue letter were not excluded, however, Defendant would be entitled to summary judgment on Plaintiff's Title VII claim for another reason: Plaintiff has failed to establish a *prima facie* case of retaliation.

## 2. Counts I, II, and III and a *Prima Facie* Retaliation Claim

Retaliation claims under 42 U.S.C § 1981, Title VII, and ELCRA are all analyzed under the same standard. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018). Where, as here, a plaintiff relies on circumstantial evidence of retaliation, the *McDonnell Douglass* burden-shifting framework applies.[4] *Laster v. City of Kalamazoo*, 746

---

[4] In his response to Defendant's motion for summary judgment, Plaintiff argues that he "has presented overwhelming direct and circumstantial evidence" establishing his claims of retaliation and discrimination, as well as his wage and overtime claims. (ECF No. 20, PageID.478.) This claim is puzzling for two reasons. First, because Plaintiff stipulates to the dismissal of his wage and overtime claims in the same brief. (*See id.* at PageID.488.) Second, because Plaintiff has presented no *direct* evidence whatsoever of retaliation or discrimination.

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). In the retaliation context, for example, direct evidence would include "'blatant remarks' revealing . . . retaliatory intent." *See Mansfield v. City of Murfreesboro*, 706 Fed. Appx. 231, 235 (6th Cir. 2017) (quoting *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013)). Here, Plaintiff has, at best, presented circumstantial evidence of retaliation and discrimination. Accordingly, both Plaintiff's retaliation and discrimination claims are analyzed under the *McDonnell Douglass* burden-shifting framework.

F.3d 714, 730 (2014). Under this framework, the "[p]laintiff bears the initial burden to establish a *prima facie* case of retaliation." *Id.* To establish a *prima facie* retaliation claim, a plaintiff must establish that:

> (1) he engaged in a protected activity;
>
> (2) his exercise of such protected activity was known by the defendant;
>
> (3) he suffered an adverse employment action; and
>
> (4) there was a causal connection between the protected activity and the adverse employment action.

*Rogers*, 897 F.3d at 775.

If a plaintiff succeeds in establishing a *prima facie* case of retaliation, the burden "shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions." *Laster*, 746 F.3d at 730 (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). If the employer satisfies this burden, the burden shifts back to the plaintiff to demonstrate that the purported legitimate reason "was a pretext designed to mask retaliation." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2008) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997)).

Here, Defendant argues that Plaintiff has failed in his initial burden to establish a *prima facie* case of retaliation. Defendant does not dispute that Plaintiff engaged in a protected activity and that his exercise of such protected activity was known by Defendant. Defendant does contend, however, that Plaintiff cannot establish any adverse employment action, let alone one causally connected to a protected activity. (ECF No. 16, PageID.267.) For the reasons set forth below, the Court agrees.

### a. Adverse Employment Action

"In the retaliation context, the term 'adverse employment action' . . . includes any conduct that would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021) (internal quotations omitted).

In his response to Defendant's motion for summary judgment, Plaintiff presents two theories of adverse employment actions, alleging: (1) that he was "laid off several times . . . before other employees in his department that had less seniority," and (2) that he was denied overtime. (ECF No. 20, PageID.487.)

As to the layoff theory, Defendant argues that Plaintiff "is barred from including claims beyond those raised in the Complaint for the first time at the summary judgment stage." (ECF No. 21, PageID.534.) The Court agrees.

"Parties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing." *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019). "By that point, 'a plaintiff has conducted discovery and has had the opportunity to amend the complaint and raise additional theories.'" *Id.* (quoting *West v. Wayne County*, 672 F. App'x 535, 541 (6th Cir. 2016)). If, instead, a plaintiff introduces a new, factually distinct claim in his summary-judgment briefing, "it generally subjects a defendant to unfair surprise, because the defendant has no opportunity to investigate the claim during discovery." *Id.* (internal quotations omitted).

In *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 Fed. Appx. 659 (6th Cir. 2012), for example, the plaintiff sued the defendant alleging violations of his right to due process. In response to the defendant's motion for summary judgment, the plaintiff introduced new

theories as to how the defendant had violated his due process rights, including failure to provide him with a police report. *Id.* at 664–65. The Sixth Circuit noted that "the single fact upon which this allegation rests—that [the plaintiff] did not receive a copy of the police report—was not included anywhere in the complaint." *Id.* at 665. "As a consequence, the language that was actually in the complaint did not give [the defendant] notice that it would have to defend against the claim that it did not provide a police report to [the plaintiff]." *Id.*

Here, the circumstances are similar to *Desparois*. In response to Defendant's motion for summary judgment, Plaintiff has introduced a new theory of the adverse employment action underlying his retaliation and discrimination complaints. Plaintiff's Complaint contains no allegation that he was laid off before other employees with less seniority.[5]

_____

[5] The only possibly related allegation in Plaintiff's Complaint are two ambiguous references to termination. There is, notably, no mention of termination in Plaintiff's list of factual allegations. (*See* ECF No. 1, ¶¶ 7–29.) Rather, the two references to termination appear in the paragraphs outlining Counts I and IV. (*See id.* at ¶¶ 37, 70.) Both paragraphs state that "[a]s a direct and proximate result of those actions . . . Plaintiff was unlawfully terminated." (*Id.*) Because of the many errors in the surrounding paragraphs, it is frankly unclear whether the references to termination were intended at all. (*See, e.g., id.* at ¶ 32 (referring to the male Plaintiff as "her" and referencing, for unclear reasons, "the First Amendment"); *id.* at ¶ 39 (referring to the singular Plaintiff as plural); *id.* at ¶ 53 (referring to the male Plaintiff as "her"); *id.* at ¶ 66 (referring to the male Plaintiff as "her"); *id.* at ¶

(*See* ECF No. 1, ¶¶ 7–29 (alleging that Defendant "was not giivng [*sic*] overtime" but making no mention of temporary layoffs).) Thus, as in *Desparois*, the language that is actually in the Complaint did not give Defendant notice that it would have to defend against this factually distinct claim. Accordingly, Plaintiff was obligated to amend his complaint to include the temporary layoff allegations, and the Court will not consider them.

---

71 (referring to the singular Plaintiff as plural); *id.* at ¶ 79 (referring to the singular Plaintiff as "Plaintiffs"); *id.* at ¶ 101 (referring to the singular Plaintiff as "they"); *id.* at ¶ 109 (referring to the singular Plaintiff as "employees").)

    The Court finds that these two isolated and confusing references to termination did not give Defendant notice that it would have to defend against the factually distinct claim that Plaintiff was temporarily laid off before other employees with less seniority. In this sense, too, the circumstances here are similar to *Desparois*. There, the plaintiff argued that, while failure to provide him with a police report was not *explicitly* included in his amended complaint, it "should be understood as part of the failure to allow him 'a sufficient opportunity to marshal facts and evidence to counter the charges.'" *Desparois*, 455 Fed. Appx. At 665. The Sixth Circuit rejected this argument, noting that it was clear that the defendant "had no idea that the police report was a potential basis for [the plaintiff]'s due process claim," because the defendant made "no mention of the police report" in its briefing. *Id*. Similarly, here it is clear that Defendant had no idea that temporary layoffs were a potential basis for Plaintiff's retaliation claim because Defendant made no mention of temporary layoffs in its summary judgment briefing. Instead, Defendant noted briefly that Plaintiff had not been terminated and focused on the overtime theory that was apparent from Plaintiff's complaint. (*See* ECF No. 16, PageID.267–270.)

16

On the other hand, Plaintiff's second theory of an adverse employment action—that he was denied overtime—is clearly contained in his Complaint. (*See, e.g.*, ECF No. 1, ¶ 10.) Defendant argues, however, that Plaintiff has failed to demonstrate a triable issue of material fact regarding the denial of overtime. (*See* ECF No. 21, PageID.532–534.) Specifically, Defendant argues that the record shows Plaintiff worked overtime throughout his employment—including after his discrimination complaint—and that the claim that others worked more overtime is purely speculative. (*Id.*) According to Defendant, Plaintiff "provides no record evidence to show he was denied opportunities for overtime." (*Id.* at PageID.534.)

It is true that the record shows Plaintiff worked overtime throughout his employment. (*See, e.g.*, ECF Nos. 16-5, 16-6, 16-7, 16-8, 16-9, 16-10, 16-14 (earnings summaries and pay records).) It is also true that Plaintiff has provided *little* record evidence to show that he was denied opportunities for additional overtime. It is not true, however, that Plaintiff has provided *no* record evidence to show that he was denied opportunities for additional overtime. In his response to Defendant's motion for summary judgment, Plaintiff cites to one piece of evidence on

the record: his own deposition testimony. (*See, e.g.*, ECF No. 20, PageID.479–480.) The Sixth Circuit has repeatedly held that a plaintiff's testimony may constitute sufficient evidence to defeat a defendant's motion for summary judgment. *See, e.g.*, *Moran v. Al Basit LLC*, 788 F.3d 201, 206 (6th Cir. 2015).

To create a genuine dispute of material fact, however, a plaintiff's testimony must include "specific facts," and not merely "general allegations" or "conclusory statements." *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020). Thus, for example, "[a] discrimination plaintiff's generic testimony that she was qualified for a position . . . does not suffice to withstand summary judgment on that qualification issue without specific facts supporting this general testimony." *Id.* (citing *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009)).

The Court finds the Sixth Circuit's FLSA case law particularly instructive. In the FLSA context, to survive summary judgment, a plaintiff "must present [enough evidence] to create a jury question over whether they worked overtime." *Id.* A plaintiff's testimony alone may constitute enough evidence to create a jury question. In *Moran*, for example, a plaintiff's testimony was sufficient to create a genuine dispute

18

of material fact over whether he had worked overtime because the plaintiff "coherently describe[d] his weekly work schedule, including typical daily start and end times which he used to estimate a standard work week of sixty-five to sixty-eight hours." 788 F.3d at 205.

On the other hand, the Sixth Circuit has also held that a plaintiff's testimony alone does *not* create a genuine dispute of material fact over whether he worked overtime where that testimony is "too 'equivocal, conclusory, and lacking in relevant detail.'" *Viet*, 951 F.3d at 824. In *Viet*, for example, a plaintiff's "bare assertion" that he usually worked sixty hours per week was "too conclusory to create a jury question over whether [he] worked overtime in any given week between April 2014 and September 2016." *Id.* Unlike the plaintiff in *Moran*, the plaintiff in *Viet* "did not fill in his general 60-hour estimate with specific facts about his daily schedule." *Id.* The Sixth Circuit concluded that the plaintiff could not "simply turn a complaint's conclusory allegations about overtime work into an affidavit's conclusory testimony about overtime work and expect to get a jury trial under Rule 56." *Id.* at 826.

Here, of course, Plaintiff must present enough evidence to create a jury question over whether he was denied available overtime, rather than

19

whether he worked it. Nevertheless, the line drawn by *Moran* and *Viet*—between specific facts and general allegations—is helpful. The Court finds that Plaintiff's deposition testimony is much closer to the conclusory statements in *Viet* than to the specific factual allegations in *Moran*. Plaintiff testified, in general terms, that "[t]hey never asked me to work the weekend," "I didn't get no overtime on the weekend for over four years," and "[t]hey had stopped letting me work overtime." (ECF No. 20-1, PageID.510, 511, 512.) Plaintiff's bare assertions do not contain the sort of specific factual allegations that would permit a reasonable factfinder to find that there was additional overtime available in any given week and that Plaintiff was denied it.

As in *Viet*, Plaintiff cannot simply turn his Complaint's conclusory allegations into conclusory testimony and expect to get a jury trial. Plaintiff has failed to create a genuine question of material fact over whether he suffered an adverse employment action. Accordingly, Plaintiff has failed to establish a *prima facie* case of retaliation.

### b. Causal Connection

Even if Plaintiff could show an adverse employment action, Plaintiff has failed to present evidence that would permit a rational

factfinder to conclude there was any causal connection between that adverse employment action and his protected activity.

Plaintiff argues that a "tight temporal connection" supports an inference that the alleged overtime denials were causally connected to his MDCR complaint. (*See* ECF No. 20, PageID.481.) It is true that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Generally, a two- to three-month time lapse between a protected activity and an adverse employment action has been found to constitute evidence of a causal connection. *See Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 776–77 (6th Cir. 2018).

However, "[t]emporal proximity *alone* generally is not sufficient to establish causation." *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (emphasis added). Cases in which temporal proximity alone suffices to show causation are "rare" and generally require that "an adverse employment action occurs *very* close in time after an employer

learns of a protected activity." *Mickey*, 516 F.3d at 525 (emphasis added); *see also Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010) ("At this point, our case law can fairly be characterized as recognizing the possibility that, on a particular set of facts, *extremely close* temporal proximity could permit an inference of retaliatory motive . . . .") (emphasis added). For example, the Sixth Circuit has found temporal proximity alone sufficient to show causation where the plaintiff was terminated "the very day" the defendant learned of his EEOC charge. *Mickey*, 516 F.3d at 525. In contrast, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* (citing *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 365 (6th Cir. 2001)).

Plaintiff filed his first MDCR complaint on June 12, 2019. (ECF No. 20, PageID.479.) In his Complaint, Plaintiff alleges that "he had been blocked from receiving overtime starting September 19, 2019, only three months after he filed his MDCR racial discrimination complaint." (ECF No. 1, ¶ 28.) An adverse employment action within three months of

protected activity could certainly constitute evidence of a causal connection. However, Plaintiff does not present any evidence regarding the September 19 date—or even mention the September 19 date—in his summary judgment briefing. Rather, Plaintiff alleges in general terms that he was "constantly" denied weekend overtime. (ECF No. 20, PageID.481.)

Plaintiff's response brief mentions only one *specific* date on which he alleges he was denied overtime: April 2, 2022. (*See* ECF No. 20, PageID.481, 487.) Because over two years and nine months passed between his MDCR discrimination complaint and April 2, 2022, this more specific allegation does not involve the sort of temporal proximity that constitutes evidence of causation—let alone sufficient evidence to show causation by itself. *See, e.g.*, *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 676 (6th Cir. 2013) (noting that "multiyear gaps" between protected conduct and retaliatory acts are insufficient to establish a causal connection); *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) (noting an absence of "authority holding that a causal connection exists where there has been a gap of multiple years"). Accordingly, this is not the "rare" sort of case in which temporal proximity alone suffices to show causation.

Nor has Plaintiff produced additional evidence that, alongside temporal proximity, might support an inference of causation.

There is one final problem with Plaintiff's reliance on temporal proximity to establish causation: Plaintiff alleges that he was denied weekend overtime continuously during his employment, rather than only after he engaged in protected activity. (*See, e.g.*, ECF No. 20, PageID.481 ("Plaintiff also testified that he was constantly denied the ability to work weekends during his time at NYX."); ECF No. 20-2, PageID.526 (alleging retaliation because Defendant "has *continued* to deny me overtime") (emphasis added).) In fact, the basis for Plaintiff's discrimination complaint to MDCR was that he was already being denied overtime. (*See* ECF No. 16-3, PageID.317 ("Since February 2019 . . . I have constantly requested overtime . . . but was constantly denied.").)

If temporal proximity, by itself, rarely satisfies causation, it is even less likely to satisfy causation when the adverse action actually *preceded* the protected activity. *Cf. Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (noting that employers "proceeding along lines previously contemplated . . . is no evidence whatever of causality"). Along these lines, the Sixth Circuit has previously found that a plaintiff could not show

24

causation where "the alleged retaliatory actions . . . were part of an ongoing pattern that predated the [protected activity]." *Stewart v. Esper*, 815 Fed. Appx. 8, 21 (6th Cir. 2020).

The circumstances here are like those in *Stewart*. Plaintiff himself alleges that the overtime denials were part of an ongoing pattern that predated his protected activity, the MDCR complaint. On these facts, a rational factfinder could not infer a causal connection between Plaintiff's protected activity and the alleged overtime denials. Because he can establish neither an adverse employment action nor a causal connection, Plaintiff has failed to establish a *prima facie* case of retaliation. Accordingly, the Court grants summary judgment on Plaintiff's retaliation claims.

## B. Discrimination Claims – Counts IV and V

Counts IV and V allege racial discrimination in violation of 42 U.S.C. § 1981 and ELCRA respectively. Discrimination claims under 42 U.S.C § 1981 and ELCRA are reviewed under the same standard. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018). Like retaliation claims, discrimination claims based on circumstantial evidence are subject to the *McDonnell Douglas* burden-shifting

25

framework. *Id.* Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id.* To establish a *prima facie* case of race discrimination, a plaintiff must show that:

(1) He was a member of a protected class;

(2) He suffered an adverse employment action;

(3) He was qualified for the position; and

(4) He was treated differently than a similarly-situated, non-protected employee.

*Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citing *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)).

If a plaintiff succeeds in establishing a *prima facie* case of discrimination, the burden shifts to the defendant "to put forth a 'legitimate, nondiscriminatory reason' for the complained of adverse treatment." *Id.* at 706 (citing *DiCarlo*, 358 F.3d at 414). "If the defendant meets this burden . . . the plaintiff then needs to show that the defendant's 'legitimate nondiscriminatory reason' was a 'pretext for discrimination.'" *Id.* at 706–07 (quoting *DiCarlo*, 358 F.3d at 414–15).

26

Here, as with the retaliation claims, Defendant argues that Plaintiff has failed in his initial burden to establish a *prima facie* case of discrimination. (*See* ECF No. 16, PageID.270–273.) Defendant does not dispute that Plaintiff is a member of a protected class, or that Plaintiff is qualified for his position. Rather, Defendant argues that Plaintiff has not suffered an adverse employment action and that he has not identified a comparator outside of his protected class who was treated more favorably. (*See id.* at PageID.272–273.) For the reasons set forth below, the Court agrees.

### 1. Adverse Employment Action

Plaintiff alleges the same adverse employment actions in his discriminations claims as in his retaliation claims. Specifically, Plaintiff alleges (1) that he was temporarily laid off before others with less seniority and (2) that "he was frequently denied voluntary overtime that was given to his coworkers." (ECF No. 20, PageID.485.)

The Court will not consider the alleged temporary layoffs because, as set forth above, those claims were not included in Plaintiff's Complaint. As the Court has explained, Plaintiff was therefore obligated to seek to amend his Complaint to include the temporary layoff

27

allegations—he cannot simply spring them on Defendant in his summary judgment briefing.

The overtime denial allegations, on the other hand, were included in Plaintiff's Complaint. As set forth above, however, the only evidence of overtime denials presented by Plaintiff consists of Plaintiff's own vague, conclusory deposition testimony. Plaintiff has therefore failed to present evidence that would permit a rational factfinder to conclude he suffered an adverse employment action. Accordingly, Plaintiff has failed to establish a *prima facie* case of discrimination.

### 2. Similarly Situated Comparator

Even if Plaintiff could show an adverse employment action, Plaintiff has failed to present evidence that would permit a rational factfinder to conclude he was treated differently than a similarly-situated, non-protected employee.

In its motion for summary judgment, Defendant argues that Plaintiff has failed to identify a similarly-situated comparator who was treated more favorably because Abdul Hanyn, his only potential comparator, worked a different shift with different overtime opportunities. (ECF No. 16, PageID.271.) In his response, Plaintiff

argues that he has "also identified another individual, Ahmed, who received overtime not available to Plaintiff during the time that he worked in the same shift and department as Plaintiff." (ECF No. 20, PageID.486.) Defendant replies that Plaintiff's allegations regarding Ahmed "are no more than self-serving speculation, as there is no record evidence of Ahmed's work schedule or overtime hours." (ECF No. 21, PageID.533.)

As with Plaintiff's overtime denial allegations, it is not true that Plaintiff has presented *no* evidence that Ahmed was similarly situated and received overtime not available to Plaintiff. Plaintiff points to his own deposition testimony that Ahmed worked weekend overtime while working on the same shift as Plaintiff. (*See* ECF No. 20, PageID.486.) As set forth above, a plaintiff's testimony alone may sometimes defeat a motion for summary judgment. *See Moran v. Al Basit LLC*, 788 F.3d 201, 206 (6th Cir. 2015). As the Court has explained, however, there is a distinction between testimony consisting of specific factual allegations and testimony consisting of bare assertions and conclusory allegations. *See Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020).

In *Milczak v. GM, LLC*, 102 F.4th 772, 787 (6th Cir. 2024), for example, the Sixth Circuit found that a plaintiff had failed to present evidence that would permit a factfinder to conclude that the plaintiff's proposed comparators were similarly situated or treated more favorably. The Sixth Circuit noted that the plaintiff had "provide[d] no relevant dimension of comparison for these other employees, such as job title, location, or age." *Id.* In addition, the plaintiff's evidence that his comparators were treated more favorably that the plaintiff's "rest[ed] solely on office gossip recounted in his own deposition testimony" and "lack[ed] any information specific enough to create a genuine issue of material fact." *Id.*

The circumstances here are similar. Plaintiff's evidence of a similarly-situated comparator consists entirely of his own deposition testimony that Ahmed worked the same shift and worked weekend overtime. (*See* ECF No. 20, PageID.486.) Despite the benefit of a full discovery period, Plaintiff has not supplemented these bare assertions with any documentary evidence. While Plaintiff's deposition testimony alone could defeat summary judgment, it will not do so if it consists only of vague, conclusory allegations. Like the deposition testimony in

30

*Milczak*, Plaintiff's deposition testimony lacks any information specific enough to create a genuine issue of material fact.

Because he can establish neither an adverse employment action nor a similarly-situated comparator who was treated more favorably, Plaintiff has failed to establish a *prima facie* case of discrimination. Accordingly, the Court grants summary judgment on Plaintiff's discrimination claims.

### C. Wage and Overtime Claims – Counts VI, VII, and VIII

Plaintiff has stipulated to the dismissal of his FLSA, PWFBA, and IWOWA claims. Accordingly, the Court grants summary judgment on these claims.

## IV.   Conclusion

For the reasons set forth above, the Court GRANTS Defendant's motion for summary judgment. (ECF No. 16.)

IT IS SO ORDERED.

Dated: November 4, 2025          s/Judith E. Levy
    Ann Arbor, Michigan          JUDITH E. LEVY
                                 United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 4, 2025.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager
